THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
10200 Willow Creek Road, Suite 160
San Diego, CA  92131
Tel: (619) 308-5034
Fax (888) 341-5048

MAURIELLO LAW FIRM, APC
Thomas D. Mauriello (SBN: 144811)
tomm@maurlaw.com
1181 Puerta Del Sol, Suite 120
San Clemente, CA  92673
Tel: (949) 542-3555
Fax: (949) 606-9690

PENN & SEABORN
Myron C. Penn (Admitted *Pro Hac Vice*)
myron@pennandseaborn.com
L. Shane Seaborn (Admitted *Pro Hac Vice*)
shane@pennandseaborn.com
53 Highway 110
P. O. Box 5335
Union Spring, AL  36089
Tel: (334) 738-4486
Fax: (334) 738-4432

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| FREDDIE LEE SMITH and LUE VAIL SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PATHWAY FINANCIAL MANAGEMENT, INC.,<br><br>Defendant. | CASE NO.: SACV 11-1573-JVS (MLGx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date:** October 15, 2012<br>**Time:** 1:30 p.m.<br>**Courtroom:** 10C<br>**Judge:** Hon. James V. Selna<br>**Trial Date:** March 1, 2013<br><br>**Complaint Filed:** October 10, 2011 |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL AND LEGAL SUMMARY OF ACTION ........................................ 2

     A.    *Pathway's Misleading Advertising and Representations* ........................ 2

     B.    *Pathway's Unlawful Agreement with Plaintiffs and Failure to Provide Services* ................................................................................ 4

     C.    *Pathway's Business Model Also Centered Around the Unauthorized Practice of Law and Attorney Misconduct* ............................................ 6

     D.    *Pathway Has Operated Without the Prorater's License Required By Law* ........................................................................................... 8

     E.    *Pathway Has Been Disciplined By Multiple States for the Same Misconduct* ..................................................................................... 9

     F.    *Pathway Has Violated the Credit Repair Organizations Act* ................. 10

III.   ARGUMENT .................................................................................... 12

     A.    The Proposed Class Meets All the Requirements of Rule 23 .................. 12

         1.    Numerosity and Ascertainability ................................................ 13

         2.    Commonality ......................................................................... 13

         3.    Typicality ............................................................................. 14

         4.    Adequacy of Representation ...................................................... 15

     B.    Certification is Warranted Under Rule 23(b)(3) ................................... 16

         1.    Common Issues Predominate ..................................................... 16

             a.    Common Issues Predominate on the UCL Claims ............. 17

             b.    Common Issues Predominate on the CLRA Claim ............. 19

             c.    Common Issues Predominate on Plaintiffs' Additional Claims ................................................................... 19

             d.    California Law May Be Applied to a Multi-State Class ..... 20

             e.    Calculation of Damages Does Not Defeat Predominance .. 22

         2.    A Class Action is Superior to Other Methods of Adjudication ..... 23

         3.    Trial of the Class Claims Would be Manageable .......................... 24

C.     Certification is Also Warranted Under Rule 23(b)(1) and (b)(2) ............ 24

IV.    CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426
    (S.D. Cal. July 25, 2011) ..................................................................... 12, 25

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................... 15

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ....................................................... 2, 11, 14, 22

*Cervantez v. Celestica Corp.*,
    253 F.R.D. 562 (S.D. Cal. 2008) ................................................................ 18

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) .................................................................... 17

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2007) ...................................................................... 13

*Crawford v. Honig*,
    37 F.3d 485 (9th Cir. 1994) ........................................................................ 16

*Educ. Testing Servs. v. Simon*,
    95 F.Supp.2d 1081 (C.D. Cal. 1999) .......................................................... 18

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................... 11

*Elliott v. ITT Corp.*
    150 F.R.D. 569 (N.D. Ill. 1992) ................................................................. 13

*Evans v. IAC/Interactive Corp.*,
    244 F.R.D. 568 (C.D. Cal. 2007) ............................................................... 15

*Fendler v. Westgate-Californi Corp.*,
    527 F.2d 1168 (9th Cir. 1975) .................................................................... 16

*Galvan v. KDI Distribution, Inc.*,
    2011 WL 5116585 (C.D. Cal., Oct. 25, 2011) .............................. 11, 16, 19, 21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................. *passim*

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................. 1, 11

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ...................................................................... 13

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CLASS CERT.

- iii -

Case No. SACV 11-1573-JVS (MLGx)

# TABLE OF AUTHORITIES

**PAGE**

*In re Lilco Sec. Litig.*,
   111 F.R.D. 663 (E.D.N.Y. 1986) ...................................................... 21

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ...................................................... 23

*In Re USF Tel. Billing Practices Litig.*,
   219 F.R.D. 661 (D. Kan. 2004) .................................................... 23, 24

*Kamm v. Cal. City Develp. Co.*,
   509 F.2d 205 (9th Cir. 1975) ............................................................ 17

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ............................................................ 16

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas
   Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ..................................... 16

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ....................................................... 12, 25

*Negrete v. Allianz Life Ins. Co.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ...................................................... 22

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) ....................................................... 15

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ..................................................... 14

*Phillips Petroleum Co.  v. Shutts*,
   472 U.S. 797 (1985) .................................................................... 20, 21

*Rannis v. Fair Credit Lawyers, Inc.*,
   2007 U.S. Dist. LEXIS 17856 (C.D. Cal. Mar. 12, 2007) .......... 15, 19, 20

*Sanders v. Fidelity Mortg. Co.*,
   2009 WL 146686 (N.D. Cal. 2009) ..................................................... 9

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ..................................................... 13

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ................................................ 15, 18, 19

*Stratton v. Am. Med. Sec., Inc.*,
   266 F.R.D. 340 (D. Ariz. 2009 ......................................................... 20

*Valentino v. Carter Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................. 16, 17, 23

**TABLE OF AUTHORITIES**

**PAGE**

*Vega v. T-Mobile, Inc.*,
  564 F.3d 1256 (11th Cir. 2009)..........................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. ___, 131 S.Ct. 2541 (2011) .............................................11, 14

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)..........................................................25

*Westways World v. AMR*,
  218 F.R.D. 223 (C.D. Cal. 2003) .......................................................25

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ..........................................................15

*Zinser v. Accufix Research Inst. Inc.*,
  253 F.3d 1180 (9th Cir. 2001)......................................................17, 25

**STATE CASES**

*Anthony v. Gen. Motors Corp.*,
  33 Cal.App.3d 699 (1971)..............................................................20

*Bank of the West v. Superior Court*,
  2 Cal.4th 1254 (1992)...........................................................17, 18, 22

*Brockey v. Moore*,
  107 Cal.App.4th 86 (2003)..............................................................17

*Clothesrigger, Inc. v. GTE Corp.*,
  191 Cal.App.3d 605 (1987)..............................................................21

*Cortez v. Purolator Air Filtration Prods.*,
  23 Cal.4th 163 (2000)...............................................................9, 18

*Diamond Multimedia Sys., Inc. v. Superior Court*,
  19 Cal.4th 1036 (1999)..................................................................22

*Fletcher v. Sec. Pac. Nat'l Bank*,
  23 Cal.3d 442 (1979)...................................................................18

*Hale v. Sharp Healthcare*,
  183 Cal.App.4th 1373 (2010)............................................................17

*In re Steroid Hormone Cases*,
  181 Cal.App.4th 145 (2010) ............................................................19

*In Re Tobacco II Cases*,
  46 Cal.4th 298 (2009)..................................................................18

# TABLE OF AUTHORITIES

**PAGE**

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310 (2011) ..................................................................... 18

*Linder v. Thrifty Oil Co.,*
    23 Cal.4th 429 (2000) ..................................................................... 18

*Mass. Mut. Life Ins. Co. v. Super. Ct.,*
    97 Cal.App.4th 1282 (2002) ..................................................... 17, 19

*McAdams v. Monier, Inc.,*
    182 Cal.App.4th 174 (2010) ........................................................... 19

*McIntosh & Mills,*
    121 Cal.App.4th 333 (2004) ............................................................. 7

*Prata v. Superior Court,*
    91 Cal.App.4th 1128 (2001) ........................................................... 19

*Vasquez v. Superior Court,*
    4 Cal.3d 800 (1971) .................................................................. 18, 23

*Washington Mut. Bank, F.A. v. Superior Court,*
    24 Cal.4th 906 (2001) .............................................................. 21, 22


**STATE STATUTES**

Cal. Bus & Prof. Code

    §6145 ............................................................................................ 7

    §17200 ................................................................................... 1, 18

    §17200 *et seq.* ............................................................................. 1

    §17538.9 ..................................................................................... 19


Cal. Civ. Code

    §1750, *et seq.* ............................................................................. 1

    §1770(a) ..................................................................................... 19

    §3294 ......................................................................................... 22

# TABLE OF AUTHORITIES

<u>**PAGE**</u>

Cal. Code of Regulations

§1782 ...................................................................................................4

§1789 ...................................................................................................3

Cal. Fin. Code

§12000 .................................................................................................8

§12202.1 ..............................................................................................8

§12200, *et seq.* .............................................................................8, 17

§12314 .................................................................................................9

§12315 .................................................................................................9

§12316 .................................................................................................9

§12327 .................................................................................................7

**FEDERAL STATUTES**

United States Code, Vol. 15

§1679. ................................................................................10, 11, 22

§1679, *et seq.* ................................................................................ 10

**FEDERAL RULES**

Federal Rules of Civil Procedure

Rule 23....................................................................................1, 12

Rule 23(a) ........................................................................1, 12, 16

Rule 23(a)(1).................................................................................13

Rule 23(a)(3).................................................................................14

Rule 23(a)(4).................................................................................15

Rule 23(b) .....................................................................................12

Rule 23(b)(1) ...............................................................1, 12, 24, 25

# TABLE OF AUTHORITIES

**PAGE**

Rule 23(b)(2) ......................................................................1, 12, 24, 25

Rule 23(b)(3) ..............................................................1, 12, 16, 23, 24

Rule 23(g) ......................................................................................16

## I.      INTRODUCTION

Plaintiffs seek certification of a plaintiff class under Federal Rules of Civil Procedure 23(b)(1), (2) and (3) for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, violation of the federal Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679, *et seq.,* California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.,* breach of contract, common counts, and declaratory relief against Defendant Pathway Financial Management, Inc. ("Pathway").

The proposed class (the "Class") consists of all citizens of the United States who have entered into an agreement with Pathway between January 1, 2008 and the present (the "Class Period") for Pathway to provide debt settlement relief services.

Recognizing that Plaintiffs bear the burden of showing that the proposed class satisfies Rule 23's requirements, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), based on the allegations of the First Amended Complaint, ¶¶11-31[1], and the evidence available to date provided in the accompanying Declarations (which evidence is still being supplemented), certification of this Class is appropriate.  Each requirement of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- is met, and to the extent Pathway could identify any individual issues, common questions would predominate over any such individual issues.  Class members, with their relatively small individual monetary claims, will have little interest in individually controlling the prosecution of this action.  The action is also manageable, since the issues raised in any individual actions would be the same as those raised here.  As all of the practices complained of are admittedly uniform and standardized, this case is ideal for class treatment.  Finally, certifying this action is authorized not only by Rule 23(b)(1) and (b)(2), but also under Rule 23(b)(3) as the superior method to vindicate the rights of all Class members.

---

[1]     Unless otherwise indicated, references herein to "¶_" are to the operative First Amended Complaint.

1    Plaintiffs have also submitted a trial plan showing how this case is manageable

2    and can be litigated, establishing liability and damages on a class-wide basis.

3    Declaration of Alan M. Mansfield in Support of Plaintiffs' Motion for Class

4    Certification ("Mansfield Decl.") at ¶¶27-32.  Monetary calculations on behalf of the

5    Class would be formulaic: take the total dollar value of the upfront and/or settlement

6    fees charged by Pathway during the Class Period, or any other monies currently under

7    Pathway's control that are traceable to Class members, and return them to consumers

8    on the basis they were, and are still being, illegally collected and retained.  Pathway

9    has provided its fee information thus far only as to the named Plaintiffs, but for them

10   alone these fees total approximately $4,668, and there are close to 4,500 Class

11   members.  *See* Mansfield Decl., ¶9-10, Exs. 8-9.  Certification of this Class would

12   thus provide substantial benefits to the parties and the Court.

13   **II.    FACTUAL AND LEGAL SUMMARY OF ACTION**[2]

14          A.    *Pathway's Misleading Advertising and Representations*

15          Plaintiffs Freddie and Lue Vail Smith discovered Pathway through a television

16   commercial that aired in November 2008 in their home state of Alabama, paid for and

17   reviewed by Pathway.  Mansfield Decl., Ex. 8.  This commercial (apparently similar

18   to radio advertisements and direct mailings identified by other consumers) asserted

19   Plaintiffs could eliminate their personal consumer debts and end further harassing

20   calls from bill collectors.[3]  In response to this promise, the Smiths contacted Pathway.

21

22   [2]   This summary is based on the allegations of the Complaint and the evidence
     gathered so far.  The parties need not make a full evidentiary showing on the merits,
23   so long as the Court is provided enough information to form a reasonable judgment on
     each certification requirement.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).
24   Pathway has yet to produce significant requested evidence pertaining to class
     certification. Declaration of Thomas D. Mauriello ("Mauriello Decl."), ¶6-14.
25   Accordingly, Plaintiffs reserve the right to supplement the evidentiary record to
     address any arguments Defendant raises in this regard.  Pathway may not properly
26   claim Plaintiffs' showing on class certification is deficient based on its own failure to
     timely produce relevant information.
27

28   [3]   Mansfield Decl., Exs. 8, 18.   Pathway claims to either not have these
     advertisements, though apparently have made no effort to obtain them, or have
     admitted they have them but have yet to produce them.  Mauriello Decl. at ¶8, 13.

The Smiths sought Pathway's services to resolve the over $28,000 in consumer debt they had due to consumer credit card debts and medical bills resulting from Freddie Smith's disability, as indicated on their Pathway Client Information Page Form. *Id.,* Ex. 13. Pathway's customer service representative, Ernie Schuerman, told the Smiths that they did not have to file for bankruptcy and that Pathway could prepare a plan to get them out of debt faster and address these bills by entering into a debt management plan where Pathway would negotiate settlements with their creditors for either a lump sum or monthly payments. As a direct result of these and other similar representations, the Smiths reasonably believed that signing up for Pathway's services would help resolve their debts and ultimately, in the long run, improve their credit scores even if they would go down in the short term.

Although Pathway took down its public website after this case was filed, as an example of what Pathway claimed, Pathway stated that one benefit of signing up with Pathway was that, even though consumers' credit scores would initially go down, they would ultimately improve by participating in Pathway's debt management program: "What would you rather have, a 650 credit score with credit that will take you decades to pay off or an 800 credit score once you have eliminated your credit card debt and taken a fresh start towards your financial freedom?" *See* Mansfield Decl., Ex. 17.

Defendant communicated in writing to the Plaintiffs using a standard form document that, Defendant's representative testified, Pathway used to communicate with Class members. In the document, similar to the oral representations made by Defendant's agents, Defendant expressly represented that the benefits of Pathway's Debt Reduction Program first included: "Your Total Debt is negotiated down

---

This is because Pathway claims the advertisements were created by third parties that generically advertised debt management services without specifically naming Pathway. Mansfield Decl., Exs. 1 and 5. However, the use of such advertisements by Pathway violates 10 C.C.R. Section 1789, which prohibits a "prorater" (discussed *infra*) from using so-called "blind" advertisements that do not identify the company. This is yet another common *per se* unlawful business practice committed by Pathway, as detailed below. Plaintiffs can provide exemplars of these advertisements once produced by Pathway.

significantly!" Pathway represented the Smiths' debt would go from approximately $28,000 to $15,000 -- a 45% reduction -- and would only take 3 years to resolve. That representation was false, as Pathway's owner, Peter Poon, testified that the dollar number utilized in that form was a computer-generated form number taking 55% of all consumers' stated debt, and was largely made up by him. After over 3 years only one debt had been resolved. This represented result was not achieved for the Smiths. Mansfield Decl., Ex. 1.[4]

B.  *Pathway's Unlawful Agreement with Plaintiffs and Failure to Provide Services*

Based on these and other similar statements, Plaintiffs signed an agreement with Pathway on November 17, 2008. Pathway advised the Smiths to stop paying their credit card bills, and required them to pay $408.00 per month beginning in November 2008. The Smiths were charged 12% of the full amount of their outstanding listed debt balance at the beginning of Pathway's representation, and Pathway would not make any attempt to resolve any of their debts or make any payments to creditors until that percentage was paid -- which took over a year. Pathway also would take an 8% contingency fee for any debt balance reduction -- including the late fees that would inevitably result from following Pathway's advice to not pay any credit cards -- and close to $800 in "maintenance fees." Pathway ultimately kept nearly $5,000.00 of the money that the Smiths paid to Pathway – *over 40% of the total amount they provided to Pathway*. Mansfield Decl., ¶9, Ex. 8.

Despite obtaining these significant and, as discussed below, *unlawful* fees, Pathway provided little or no services. Plaintiffs did not reasonably discover the

---

[4]  Mr. Poon's real name is Chau Phan. He uses the name Peter Poon in running Pathway and other related businesses. In doing so he is violating 10 C.C.R. Section 1782, which prohibits a company representative for a prorater from using a fictitious name as a "dishonest, unfair and inequitable practice". It is even unclear where Mr. Poon lives, since in his deposition he claimed to reside in asset-protection-friendly Nevada but initially could not recall his home address, until testimony resumed after a break in which he conferred with his lawyer. Mansfield Decl., ¶2, Ex. 1.

1    material fact that Pathway was not acting in accordance with its promises until they

2    continued to receive statements reflecting that all their bills were not being satisfied,

3    despite the representations by Pathway's representatives that Pathway would promptly

4    arrange to do so, and had been sued by Discover Bank for collections based on

5    Pathway's advice to not pay any of their credit card bills.  Declaration of Myron Penn

6    ("Penn Decl."), ¶3-5; Mansfield Decl., Ex. 4.

7         Pathway's inability to reduce Plaintiffs' and Class members' debts appears to

8    be largely due to the fact that each of Pathway's customer service representatives has

9    between 250 and 500 clients at any one time, and is required by Pathway to spend

10   40% of their time talking to clients.  That would leave less than 25 hours a week for

11   those representatives to address Plaintiffs' and Class members' debt-related issues, or

12   *less than five minutes per client per week*.  The situation is now worse, since Pathway

13   claims to only have 5 customer service representatives and between 2,000 and 3,300

14   active clients. Mansfield Decl., ¶24, Ex. 23.

15        Representing that Pathway would assist with Plaintiffs' MasterCard and

16   Discover Card bills, a Pathway representative told Plaintiffs that Pathway worked out

17   a deal with Mastercard to settle that debt and needed to apply approximately

18   $3,000.00 of their monthly payments to settle the Mastercard debt, but later in January

19   2011 said that it would require an *additional $600.00 per month* (on top of the

20   $431.00 per month) to apply toward the Discover Card debt -- almost their entire

21   monthly income.  Pathway never resolved that debt, and it appears from the Smiths'

22   customer notes that Pathway never even attempted to resolve that debt until after the

23   Smiths had been sued by Discover Bank in late 2010 -- almost 2 years after the Smiths

24   signed up with Pathway.  Penn Decl., ¶3-5; Mansfield Decl., Ex. 16.  Even then,

25   Pathway representatives tried to act as the Smiths' lawyers, telling them when to go to

26   court. None of the Smiths' payments to Pathway were applied to their hospital bills

27   and it appears that, other than an initial contact from Pathway, Pathway never even

28   tried to resolve the Smiths' medical bills until August 2011 -- 5 months *after* they had

1    received a demand letter from the Smith's counsel.  Mansfield Decl., ¶ 18, Ex. 16.

2          C.      *Pathway's Business Model Also Centered Around the Unauthorized*
3                  *Practice of Law and Attorney Misconduct*

4          In   addition   to   its   common   course   of   affirmative   deceptions   and

5    misrepresentations  set  forth  above,  Defendant  engaged  in  numerous  uniform

6    violations of law involving an unusual and egregious overlap between consumer

7    fraud, on the one hand, and attorney misconduct and unauthorized practice of law, on

8    the other.  Defendant represented in that same form document and in sales scripts that

9    Plaintiffs' "account will be handled by our legal counsel during the entire term of your

10   payment plan" and as part of the documents it sent to Class members required them to

11   sign a separate agreement with one Richard A. Lenard, Esq., a previously suspended

12   and now-disbarred California lawyer.  *See* Mansfield Decl., Ex. 4, 13.  Mr. Lenard,

13   who Defendant required consumers to retain as the attorney who would represent

14   Plaintiffs  and  all  Class  members,  was  the  only  "legal  counsel"  involved  in  this

15   process, testified he only worked for Pathway until the Summer 2009 and only spent

16   10-15  minutes  initially  reviewing  each  customer  file,  and  did  no  other  work  for

17   Pathway  customers.    Moreover,  Lenard  is  not  licensed  to  practice  law  outside

18   California  and  therefore  could  not  lawfully  or  ethically  serve  as  an  attorney  for

19   Plaintiffs, whose debts arose in their state of residence of Alabama, or for those of

20   Class members in other states.  *In fact, Mr. Lenard was previously suspended, and*

21   *recently disbarred by the State of California for engaging in such conduct on behalf of*

22   *Pathway and other similar companies*.  Mansfield Decl., Exs. 6, 20-22.

23         What is worse, Mr. Lenard has testified that, although Pathway's employees

24   wrote letters to Class members, including Plaintiffs, identifying themselves as clerks

25   for Mr. Lenard or part of his office staff (Mansfield Decl., Ex. 6, 20), he did not in fact

26   employ or supervise such persons.  Thus, as these Pathway employees were providing

27   advice to consumers (such as to not pay their credit card bills and telling them whether

28   to go to court or not, *see Id*., Exs. 4, 16) and sending letters saying they worked for

1    Mr. Lenard when in fact they did not (another violation of Cal. Fin. Code §

2    12327(b)(3)), Pathway routinely engaged in the unauthorized and unlawful practice of

3    law, in violation of Cal. Bus. & Prof. Code § 6145 and Cal. Fin. Code § 12327.

4    Although Mr. Lenard was employed and paid by Pathway an average of $40 per

5    customer file, Pathway did not disclose to its customers the conflicts of interest

6    between Pathway and Mr. Lenard, that Mr. Lenard was no longer employed by

7    Pathway as of the Summer of 2009 (the Smiths were sued by Discover in 2010), or

8    that Pathway and Mr. Lenard were engaging in conduct prohibited by California law.[5]

9        Since Mr. Lenard has never been authorized to practice law in any state other

10   than California, if he took any actions to represent Plaintiffs and Class members, then

11   as the State Bar of California has already found he engaged in the unauthorized

12   practice of law as the appointed agent and representative of Defendant.   Thus,

13   Plaintiffs and Class members are entitled to a full refund of all fees that they paid to

14   Pathway and based on the above representation, as a contract that requires

15   performance of illegal conduct is unenforceable and void.   *McIntosh v Mills*, 121

16   Cal.App.4th 333, 344 (2004); Cal. Civ. Code § 1608.

17       If Mr. Lenard did not take any action to represent Plaintiffs – which he testified

18   he did not, other than review a customer file for 10-15 minutes (Mansfield Decl., Ex.

19   6) -- and he no longer did work for Pathway after the Summer of 2009, its claim about

20   ensuring its clients were being represented by legal counsel throughout the entire

21   payment term -- one of the primary representations made by Pathway (*Id.*, Ex. 4), was

22   false, and Defendant either illegally practiced law on its own or misrepresented or

23   failed to disclose material facts to Plaintiffs about the "legal representation" it was

24

---

[5]   Mansfield Decl., Ex. 6.  The Smiths' customer notes indicate that *after* receiving a pre-suit demand from Plaintiffs' counsel, Defendant improperly wrote directly to Plaintiffs to request that they authorize a different attorney, Caroline Elrod of Garden Grove, California, to represent them in place of Mr. Lenard.   Plaintiffs never authorized that attorney to represent them, advise them, or act on their behalf, and since she is also not licensed to practice law outside California, she could not represent any Class members outside California.  Mansfield Decl., ¶ 18, Ex. 16.

1   allegedly providing, and is similarly obligated to refund all fees Plaintiffs paid to

2   Pathway based upon such deceptive and illegal conduct.

3         D.     *Pathway Has Operated Without the Prorater's License Required By Law*

4         Further, and additionally requiring disgorgement of all fees and monies

5   collected, Pathway admitted that it is operating *without the license required by the*

6   *State of California* – indeed, Pathway has been disciplined by other States for just

7   such misconduct.  Mansfield Decl., Exs. 10-13, ¶17.  Cal. Fin. Code § 12200 states:

8         *No person shall engage in the business, for compensation*, of ...

9         *receiving money as agent of an obligor for the purpose of paying bills,*

10        *invoices, or accounts of such obligor, or acting as a prorater,* ... without

11        first obtaining a license from the commissioner. (Emphasis added.)

12  The definition of prorater, found in Financial Code § 12002.1 states:

13        A prorater is a person who, *for compensation, engages in whole or in*

14        *part in the business of receiving money or evidences thereof for the*

15        *purpose of distributing the money or evidences thereof among creditors*

16        *in payment or partial payment of the obligations of the debtor.*

17        (Emphasis added.)

18        Pathway cannot seriously dispute it falls within this description of its business

19  practices, based on its employees' own descriptions of its business operations.

20  Mansfield Decl., Exs. 1-5.  Yet Pathway is admittedly not licensed by the California

21  Corporations Commissioner to act as a prorater.  *Id.*, ¶17, Ex. 7;

22  http://www.corp.ca.gov/FSD/licensees/default.asp (last accessed August 3, 2012).

23  Thus, Pathway has been illegally engaging in business as an unlicensed bill payer or

24  prorater as defined in the Check Sellers, Bill Payers and Proraters Law, Cal. Fin. Code

25  § 12200, *et seq.*  Pathway no doubt is aware of these licensing requirements, as on

26  July 7, 2011 the California Department of Corporations enjoined Pathway's prior

27  affiliated company, Beacon Debt Solutions -- who Mr. Lenard testified engaged in the

28  same business -- from engaging in the same business scheme without a license, and

1   Mr. Aguilar testified such requirements existed.  Mansfield Decl., Exs. 5, 7, 14.

2        If Pathway is found to be a "prorater," then the fees it uniformly charges all

3   Class members violated California law.  Cal. Fin. Code §12314 and 12315 limits all

4   such fees to approximately 10% of the total outstanding loan balance -- four times less

5   than what the Smiths paid -- and requires the majority of creditors to approve such

6   fees before any fees are taken.  Because Pathway took any fees without the consent of

7   creditors and above these limits and without complying with these requirements, all

8   contracts with Pathway are, by statute, void, "and the prorater shall return to the

9   debtor all charges received from the debtor."  Cal. Fin. Code § 12316.   As it

10  knowingly operated without a prorater's license and imposed fees in violation of that

11  California law (which it claims in its contract applies to all Class members), Pathway

12  illegally engaged in such business from California and accepted money from Plaintiffs

13  and the Class.   If established through summary judgment or trial, Class members

14  would be entitled to restitution of all moneys illegally collected based on these *per se*

15  unlawful business practices.  *See Sanders v. Fidelity Mortg. Co.*, 2009 WL 1246686

16  (N.D. Cal. 2009); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 178

17  (2000).

18        E.   *Pathway Has Been Disciplined By Multiple States for the Same*
            *Misconduct*
19

20        Pathway has been the subject of numerous similar consumer complaints,

21  inquiries and cease and desist orders or judgments issued by at least the States of

22  Maine, Minnesota, Colorado and Connecticut.  Mansfield Decl., Ex. 10-12, 18.   In

23  fact, such inquiries became so pervasive that Pathway created an "Attorney General

24  Complaint Detail" form to process such complaints.  Mansfield Decl., Ex. 18.  The

25  State of Minnesota required Pathway refund over $159,000 -- all the fees it collected -

26  - to Minnesota residents, and return the monies it was holding in trust for violating a

27  similar Minnesota law.  Mansfield Decl., Ex. 12.  It also has an "F" rating from the

28  BBB as a result of it receiving close to 100 complaints that the BBB has received over

1    the last 3 years and had not obtained the required licenses.  Mansfield Decl., Ex. 19.

2           F.       *Pathway Has Violated the Credit Repair Organizations Act*

3           Finally, Plaintiffs will be able to demonstrate, based on the above common

4    evidence on a class-wide basis, that Pathway's uniform conduct shows it is also

5    operating as a "credit repair organization," as defined by the Credit Repair

6    Organizations Act, 15 U.S.C. § 1679, *et seq*. ("CROA").  It uses an instrumentality of

7    interstate commerce (television and radio) or the direct mails (which it also admitted it

8    used) to sell, provide, or perform any service, in return for the payment of money or

9    other valuable consideration, for the express or implied purpose of (1) improving any

10   consumer's credit record, credit history, or credit rating; or (2) providing advice or

11   assistance to any consumer with regard to any activity or service described in (1).

12   Plaintiffs reasonably believed, based on their communications with Pathway

13   representatives, that their credit history and rating would ultimately improve if they

14   engaged Pathway's services even if their scores would initially go down, and

15   Pathway's conduct at least implied that would be the result of such efforts – in fact, it

16   publicly expressly stated as such on its own website.  Mansfield Decl., ¶19, Ex. 17.

17          If the Court or jury finds Pathway operated as a credit repair organization, it

18   would be legally barred from making any untrue or misleading representation of its

19   services, or engage, directly or indirectly, in any act, practice, or course of business

20   that constitutes or results in the commission of, or an attempt to commit, a fraud or

21   deception on any person in connection with the offer or sale of its services.   15

22   U.S.C.A. § 1679b(a)(4).   The common evidence discussed above shows that on a

23   class-wide   basis   Pathway   has   engaged   in   such   untrue   and   misleading

24   misrepresentations by claiming that it provides services it does not, and that it

25   achieves specific percentage results that it does not, and by misrepresenting or

26   requiring Class members to use legal counsel not licensed or admitted to do so on

27   their behalf, or worse, itself engages in the unauthorized practice of law.

28          In addition, if prior to the full performance of the services it allegedly provided,

---

Pathway charged and received from Plaintiffs and Class members an up-front fee of up to 12% for the services it claimed it would perform on their behalf on a Class-wide basis, such conduct violates section 1679b(b) of the CROA, which prohibits such up-front fees. And to the extent Pathway's form consumer contracts and disclosure documents can be shown to not comply with the relevant provisions of the CROA (which, if they were in form similar to the agreement Pathway provided to the Smiths, do not comply with numerous of the enumerated provisions set forth in Sections 1679C, 1679D and 1679E of that Act), such contracts (1) shall be treated as void; and (2) may not be enforced by any federal court or any other person.  15 U.S.C.A. § 1679f(a).  If such contracts are void, all payments either made or to be made pursuant to those contracts could be ordered returned to Plaintiffs and members of the Class.

If Pathway is found to have failed to comply with the provisions of the CROA, a Court or jury can find it liable for the greater of: (1) the amount of any actual damage sustained by such persons as a result of such failure; or (2) any amount paid by Plaintiffs and the Class members to Pathway.  In addition, as the above conduct was directed at close to 4,500 persons, was frequent in terms of the nature of such noncompliance, was intentional based on Pathway's illegal conduct, it not being licensed to provide such services, and violating numerous basic provisions of the law, common evidence can be used to also find Pathway liable on a class-wide basis under the CROA for punitive damages.  15 U.S.C.A. § 1679g(a)(2)(B).

In summary, Plaintiffs believe that the above common evidence and legal analysis can be used to establish on a Class-wide basis that Pathway entered into a series of unconscionable, illegal, misleading and deceptive form agreements with Plaintiffs and other similarly affected consumers (whom were in desperate and dire financial straits due to crushing debt).  Such common evidence can also be used to show that Defendant made false and misleading representations to Plaintiffs and other similarly affected consumers throughout the Class Period, including that Defendant was authorized to engage in the debt management business; would significantly

1   reduce all of these consumers' debts; either expressly or impliedly, would ultimately
2   improve their credit, credit history, and/or credit scores; and would provide qualified
3   legal counsel.  Plaintiffs and other affected consumers have lost money or property as
4   a result of such conduct, for which they are entitled to be compensated in this action.

5   **III.   ARGUMENT**

6   In ruling on a motion for class certification, the Court must determine whether
7   the moving party has shown that the Rule 23 requirements are satisfied.  While the
8   evidence set forth above, if shown at trial, would overwhelmingly establish numerous
9   violations of law by Pathway, the Court is required to presume that the factual
10  allegations of the Complaint can be proven at trial.  *Blackie,* 524 F.2d at 901-02; *Eisen*
11  *v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Galvan v. KDI Distribution Inc.*,
12  2011 WL 5116585 *3 (C.D. Cal., Oct. 25, 2011, Selna, J.).  A district court only looks
13  to the underlying merits of a plaintiff's claims to the extent that there is overlap with
14  the Rule 23 analysis.  *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. ___, 131 S.Ct.
15  2541, 2551 (2011) ("*Dukes*"); *Hanon*, 976 F.2d at 509.

16  **A.     The Proposed Class Meets All the Requirements of Rule 23**

17  Under Rule 23, the Court should certify a proposed class when it meets all the
18  prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of
19  representation – and at least one of the requirements of Rule 23(b).  The Court may
20  choose to order certification under 23(b)(1), (b)(2) and (b)(3), or just one of those
21  provisions.  *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal.
22  July 25, 2011), *7-9; 2011 WL 3047677 (S.D. Cal. July 25, 2011)*, rev'd on other*
23  *grounds,* 2011 U.S. Dist. LEXIS 129345 (S.D. Cal. Nov. 8, 2011); 2011 WL 5404026
24  (S.D. Cal Nov. 8, 2011)(addressing certification under Rule 23(b)(2) and (b)(3)).[6]

---

25  [6]  When ordering dual certification, the Court can either certify separate 23(b)(1), (2)
26  and 23(b)(3) classes, with the 23(b)(1) and (2) class being mandatory and the 23(b)(3)
    class receiving class notice and an opportunity to opt out of the damages claims
27  asserted in the case ("divided certification"), or certify a single class pursuant to
    23(b)(1) and (2) but order that absent class members be notified of the class action and
28  have an opportunity to opt out of the case ("composite certification").  *Molski v.*
    *Gleich,* 318 F.3d 937, 947 (9th Cir. 2003).

1

### 1.    Numerosity and Ascertainability

2

Rule 23(a)(1) requires that the class be "so numerous that joinder of all

3 members is impracticable."  Class certification is particularly appropriate when the

4 proposed class has a large number of potential members who are geographically

5 diverse.  *See Elliott v. ITT Corp.*, 150 F.R.D. 569, 574-75 (N.D. Ill. 1992) (whether

6 individual adjudication necessary to determine injury is not a bar to ascertainability).

7 As Pathway has had 4,483 clients throughout the United States during the Class

8 Period and maintains their names and addresses in a database (Mansfield Decl., ¶10),

9 the members of the Class are ascertainable.  The size of the Class and its geographic

10 dispersion makes individual joinder of all Class members impracticable.  *See Harris v.*

11 *Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).

12

### 2.    Commonality

13

The commonality requirement is to be construed permissively, as even the

14 existence of shared legal issues with divergent factual predicates or a common core of

15 facts with disparate legal remedies is sufficient to satisfy this requirement.  *See*

16 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[O]ne single issue

17 common to the proposed class" is enough to meet this requirement.  *Slaven v. BP Am.,*

18 *Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000) (internal citations omitted).

19

The testimony and documents produced so far and summarized above establish

20 how the key common facts in this case can be shown on a class-wide basis.  The

21 numerous common issues in this case are readily apparent from the allegations

22 contained in the Complaint and the nature of the claims as described above.  *See, e.g.,*

23 ¶¶ 11-31; *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 962 (9th Cir. 2007)

24 (predominant common questions can be plain enough that listing of examples is

25 sufficient where such issues are "readily apparent" from Complaint).  Because the

26 claims at issue are admittedly based on standardized practices, policies and materials

27 such as submitted with the Mansfield Decl., such issues can be proven on a class-wide

28 basis as set forth in detail below, and present an ideal situation for class treatment.

1   Among the many common issues here, two essential primary questions are
2   common to the entire Class, such that the answers resolve all claims of Class members
3   in one stroke: (1) whether or not Pathway provided the promised services, and
4   (2) whether Pathway's conduct, being contrary to California and federal law as
5   detailed above, as well as constituting the unauthorized practice of law, makes it
6   illegal for Pathway to collect or retain any monies obtained from such practices.
7   Accordingly, common factual and legal claims exist in this case. *Dukes*, 131 S.Ct. at
8   2551 (the common issues "must be of such a nature that it is capable of class-wide
9   resolution – which means that determination of its truth or falsity will resolve an issue
10  that is central to the validity of each one of the claims with one stroke."); *Blackie*, 524
11  F.2d at 902.  Thus, this case presents numerous common questions of law and fact.

12              **3.    Typicality**

13   Rule 23(a)(3) requires that "the claims or defenses of the representative parties
14  are typical of the claims or defenses of the class."  This requirement is satisfied if the
15  representative's claims "are reasonably coextensive with those of absent class
16  members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  As
17  long as the named Plaintiffs' and Class members' claims arise from the same course
18  of conduct and are based on the same legal theory, Plaintiffs satisfy this requirement.
19  *See O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 332 (C.D. Cal. 1998).

20   As set forth in the Complaint and the evidence cited in the Mansfield Decl. and
21  the Plaintiffs' discovery responses (Ex. 7 thereto), Plaintiffs' claims and those of
22  Class members are all based on Pathway's common course of conduct.  Plaintiffs
23  signed up for the services in question, only had one bill resolved, and were injured as
24  a result.  They also were subjected to and not aware that Pathway was engaging in
25  illegal business practices that violated both state and federal law.  Plaintiffs' claims
26  are thus based on the same legal theories as those of all Class members: uniform
27  practices in violation of the UCL, the CLRA, the CROA, the California Fin. Code,
28  breach of contract, common counts and declaratory relief.  California law controls

1   based on the provisions of Pathway's uniform contracts.  Mansfield Decl., ¶15.

2       If Plaintiffs are able to prove these standardized practices, then the Class

3   members are entitled to the same remedies – declaratory relief, damages and

4   restitution of monies made by Pathway.  Thus, they all have claims these contracts are

5   void arising from the same scheme.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d

6   1013, 1020-21 (9th Cir. 2011); *Rannis v. Fair Credit Lawyers, Inc.*, 2007 U.S. Dist.

7   LEXIS 17856, *11-12 (C.D. Cal. Mar. 12, 2007) (Guilford, J.) (certifying CROA

8   claim).  The typicality requirement is also satisfied where injunctive and declaratory

9   relief may be a significant component of the case.  *See Nicholson v. Williams*, 205

10  F.R.D. 92, 99 (E.D.N.Y. 2001) ("Typicality may be assumed where the nature of the

11  relief sought is injunctive and declaratory.")  Thus, Plaintiffs satisfy the typicality

12  requirement.  *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

13          **4.    Adequacy of Representation**

14      Rule 23(a)(4)'s requirement that "the representative parties will fairly and

15  adequately protect the interests of the class" has two parts: (1) the Plaintiffs' interests

16  must not materially conflict with those of absent Class members, and (2) counsel for

17  Plaintiffs must be able to vigorously prosecute the action on behalf of the class.  *See*

18  *Hanlon*, 150 F.3d at 1020; *Evans v. IAC/Interactive Corp*. 244 F.R.D. 568, 578 (C.D

19  Cal. 2007). Here, there are no material conflicts or antagonistic interests between

20  Plaintiffs and Class members.  Both have a strong interest in establishing Pathway's

21  liability, in having Pathway remedy those practices and ensuring they comport with

22  California and federal law.   All Class members share interests both in being

23  recompensed for their losses and in deterring such conduct in the future.  *See Wolin v.*

24  *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010).

25      Plaintiffs have been actively involved in this case from the outset, understand

26  the nature of the allegations and the relief sought on behalf of the Class, have

27  responded to discovery, and are prepared to fulfill their duties to the Class.  Penn

28  Decl., ¶6;  Mansfield Decl., Ex. 7.  Since there is no evidence this lawsuit is collusive

1  or of any substantial antagonism between Plaintiffs and other Class members,

2  Plaintiffs are adequate class representatives.  *See Crawford v. Honig*, 37 F.3d 485, 487

3  (9th Cir. 1994); *Lerwill v. Inflight Motion Pictures Inc.* 582 F.2d 507, 512 (9th Cir.

4  1978); *Galvan v. KDI Distribution*, 2011 WL 5116585 at *7-8.

5        Plaintiffs' counsel also meet the requirements of Rule 23(g).  Counsel have

6  extensive experience in prosecuting class litigation.  Plaintiffs' counsel have expended

7  hundreds of hours and thousands of dollars identifying, investigating and prosecuting

8  the claims asserted.  Plaintiffs' counsel have shown they are capable of, and have

9  committed substantial resources to, representing the Class, and are committed to

10 vigorously prosecuting this action on the Class's behalf and thus have the zeal and

11 competence necessary to prosecute this action.  *See* Mansfield Decl., ¶¶ 25-26, Ex. 25,

12 Mauriello Decl., ¶2-5,  Ex. 1; Penn Decl., ¶2; Whatley Decl., Ex. 1; *see Fendler v.*

13 *Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

14       **B.**    **Certification is Warranted Under Rule 23(b)(3)**

15       Once the four requirements of Rule 23(a) are satisfied, Rule 23(b)(3) permits

16 class certification if "the court finds that the questions of law or fact common to class

17 members predominate over any questions affecting only individual members, and that

18 a class action is superior to other available methods for fairly and efficiently

19 adjudicating the controversy."  Both these requirements are satisfied here.

20       **1.**    **Common Issues Predominate**

21       Rule 23(b)(3)'s predominance inquiry asks whether the proposed class is

22 "sufficiently cohesive to warrant adjudication by representation."  *Local Joint*

23 *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d

24 1152, 1154 (9th Cir. 2001).  To establish predominance of common issues, a party

25 seeking class certification is not required to show that legal and factual issues raised

26 by the each class member are identical.  *Hanlon*, 150 F.3d at 1022.  Rather,

27 predominance focuses on "the notion that the adjudication of common issues will help

28 achieve judicial economy."  *Valentino v. Carter Wallace, Inc.,* 97 F.3d 1227, 1234

1  (9th Cir. 1996); *Zinser v. Accufix Research Inst. Inc.,* 253 F.3d 1180 (9th Cir. 2001).

2  Plaintiffs should also show that a class action would achieve economies of time, effort

3  and expense and promote uniformity of decision without sacrificing procedural

4  fairness.  *See Kamm v. Cal. City Develp. Co.,* 509 F.2d 205, 211 (9th Cir. 1975).

5  The generalized common evidence as detailed above and submitted with this

6  motion will be used to prove each of these claims on a simultaneous, class-wide basis,

7  obviating the need to examine each Class member's individual situation.   If this

8  evidence at summary judgment or trial shows that Pathway's conduct is uniformly

9  likely to mislead and inherently violates California and federal law, this will

10  necessarily prove the claims of the Class, thereby achieving judicial economy in

11  litigating these claims rather than litigating the same claims piecemeal.

12  **a.      Common Issues Predominate on the UCL Claims**

13  The UCL claims are appropriate for class treatment.  The California Supreme

14  Court has repeatedly held that relief under the UCL is available without

15  "individualized proof of deception, reliance, and injury. . . ."  *Bank of the West v.*

16  *Superior Court*, 2 Cal.4th 1254, 1267 (1992); *see also Mass. Mut. Life Ins. Co. v.*

17  *Super. Ct.*, 97 Cal.App.4th 1282, 1289-95 (2002) (certifying UCL and CLRA claims

18  arising out of deceptive sales practices based on omissions of material facts).

19  The UCL's unlawful prong borrows violations of other statutes, such as the

20  CLRA, Cal. Fin. Code § 12200, *et seq.* and the CROA as set forth above, and makes

21  them independently actionable. Class-wide proof of their violation would be a *per se*

22  violation of the statute.  *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d

23  1042, 1048 (9th Cir. 2000); *Hale v. Sharp Healthcare*, 183 Cal.App.4th 1373 (2010);

24  *see also Brockey v. Moore,* 107 Cal.App.4th 86 (2003) (engaging in unauthorized

25  practice of law and making misrepresentation about ability to engage in such conduct

26  violates UCL, requiring restitution and injunctive relief).   Plaintiffs' and Class

27  members' right to restitution automatically flows from showing such a statutory

28  violation, as the UCL requires disgorgement of Pathway's monies made as a result

---

thereof.  *Bank of the West*, 2 Cal.4th at 1267 ("One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." [internal citations omitted]).

As to establishing a fraudulent business practice claim, only the representative plaintiffs need show that the misrepresentations at issue were "likely to deceive" a reasonable consumer targeted by the practices in question, and were a "substantial factor" in their decision in that they would not have done so had the material facts not been misrepresented or not disclosed to them.  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326-332 (2011); *In Re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009). Plaintiffs' discovery responses and documents provide such evidence.  Mansfield Decl., Exs. 7, 13.  Where, as here, "numerous consumers are exposed to the same dubious practice by the same seller … proof of the prevalence of the practice as to one consumer would provide proof for all."  *Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971);  *see also Stearns*, 655 F.3d 1013, 1022  (citing *Vasquez*).  Showing whether conduct constitutes an unfair business practice similarly raises predominant common questions.  *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 576 (S.D. Cal. 2008).

Whether Pathway's conduct was unlawful, fraudulent, or unfair will not be decided based on facts peculiar to each Class member, but rather on a single set of facts applicable to all, since knowledge of the wrongful conduct is not relevant under the UCL.  *Educ. Testing Servs. v. Simon*, 95 F.Supp.2d 1081, 1090 (C.D. Cal. 1999) ("Liability under Section 17200 of California's Business and Professions Code is strict, rendering defendants' mental states irrelevant"); *see also Linder v. Thrifty Oil Co.*, 23 Cal.4th 429 (2000); *Fletcher v. Sec. Pacific Nat'l Bank*, 23 Cal.3d 442 (1979). If Plaintiffs can establish that the uniform practices engaged in by Pathway as to consumers nationwide (about 4,500 people in total) were uniformly undertaken in violation of the above state and federal laws, Pathway's conduct constitutes a *per se* violation of the UCL since Pathway cannot legally engage in such conduct.  These are strict liability offenses.  *Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th at 177;

1    *Prata v. Superior Court*, 91 Cal.App.4th 1128 (2001) (same).

2           Significantly, none of the underlying laws that were allegedly violated (save for

3    the CLRA, discussed *infra*) cited in the Complaint and set forth above have a reliance

4    element such that a claim based on those statutes may require a showing of a Class

5    members' reliance.  *Galvan v. KDI Distribution,* 2011 WL 5116585 at *10 (certifying

6    claim based on underlying violation of Cal. Bus. & Prof. Code § 17538.9, and finding

7    no reliance required where the underlying statute did not contain any element of

8    intent: "Whether Krossland violated section 17538.9 is a common question among the

9    plaintiffs and the only question necessary to determine this UCL violation.").

10                    **b.      Common Issues Predominate on the CLRA Claim**

11           Plaintiffs' CLRA claim is similarly focused entirely on Pathway's conduct

12   rather than any Class member's unique attributes and appropriate for certification.

13   *See Mass Mut.*, 97 Cal.App.4th at 1293-94 (upholding certification of CLRA claim

14   based on misrepresentations and material omission of facts by defendant); *Stearns*,

15   655 F.3d 1013, 1022.   Under the CLRA, the primary issue is whether Pathway

16   engaged in an "unfair or deceptive act or practice".   Those acts or practices, if

17   established, would violate at least Cal. Civ. Code §§ 1770(a)(9) ("advertising services

18   with the intent not to sell them as advertised"); (a)(14) ("representing that a

19   transaction confers or involves rights, remedies or obligations which it does not have

20   or involve, or which are prohibited by law"); and (a)(16) ("representing that the

21   subject of a transaction has been supplied in accordance with previous representation

22   when it has not").  "The ultimate question of whether the undisclosed information was

23   material [is] a common question of fact suitable for treatment in a class action."

24   *Mass. Mut.*, 97 Cal.App.4th at 1294. *See McAdams v. Monier, Inc.*, 182 Cal.App.4th

25   174, 191 (2010); *In Re Steroid Hormone Cases*, 181 Cal.App.4th 145, 157 (2010).

26                    **c.      Common Issues Predominate on Plaintiffs' Additional
                               Claims**

27

28           As to the CROA claim, in *Rannis v. Fair Credit Lawyers, Inc.*, 2007 U.S. Dist.

LEXIS 17856 at *16-17, Judge Guilford certified a class based on violations of the CROA similar to the claims asserted here – that Defendant engaged in a uniform practice of requiring consumers make prepayments for such services and failing to include the required statutory terms in the form agreements used by Defendant.  In finding predominance, Judge Guilford held whether such conduct violated the CROA was a predominant common issue because "they have a direct bearing on the ability of each class member to prove [defendant's] liability."  Either Pathway complies with this statute or it does not, and its defense to such claims will likely be common as well.  Because such conduct on Pathway's part is admittedly the same for the entire Class, no individualized inquiry is necessary, and the panoply of available relief under the CROA is can properly be determined for violation of these statutes class-wide.

As to the breach of contract and common counts claims, Plaintiffs can show that all Class members accepted Pathway's offer to provide debt management services Pathway did not fully provide, using legal counsel (or their own staff) that was not authorized to act on their behalf, and that under the express provisions of both state and federal law, such contracts are illegal and therefore void and unenforceable. *See Anthony v. Gen. Motors Corp.*, 33 Cal.App.3d 699, 706 (1971); *Stratton v Am. Med. Sec., Inc.,* 266 F.R.D. 340 (D. Ariz. 2009).  Claims for declaratory relief declaring the rights, responsibilities and obligations of Class members under such illegal, void and unenforceable contracts is also properly determined class-wide, as set forth below.  Thus, predominant common questions exist for all of Plaintiffs' claims.

### d.    California Law May Be Applied to a Multi-State Class

Based on Pathway's contacts with California, it is appropriate for this Court to apply California law to the claims of all Class members and certify a nationwide class. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985), the Supreme Court explained: "We must first determine whether Kansas law conflicts in any *material* way with any other law which could apply.  There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this

suit." (Emphasis added).  First, a court may apply its state's law to the claims of out-of-state class members where there is a "significant contact or aggregation of contacts" between class members' claims and the forum, such that the application of the forum state's law would not be "arbitrary or unfair." *Shutts*, 472 U.S. at 821-2. Pathway is based in California.  Pathway conducts a great deal of business within the State, and conducts all of its operations from its sole office here throughout the United States.  Mansfield Decl., Ex. 1.  Moreover, Pathway's uniform contract provides: "Client and Pathway agree that this Agreement *shall be governed and interpreted under the laws of the State of California,*" and any suits asserting such claims are to be filed "exclusively within the Central District of California."  Mansfield Decl., ¶15, Ex. 13.   Indeed, the Smiths originally filed suit in Alabama, but dismissed it when Pathway insisted that such claims must be brought in California.  Penn Decl., ¶4.

Based on these substantial contacts with California, the burden shifts to Pathway to show that California law should not otherwise apply.  *Shutts*, 472 U.S. at 816.  As one court noted, "*Shutts* does not require us to apply the law of each state in which plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence."  *In re Lilco Sec. Litig*., 111 F.R.D. 663, 670 (E.D.N.Y. 1986). As this Court previously noted in *Galvan*, a nationwide class is proper where the relevant consumer statutes generally prohibit illegal, unfair or deceptive acts or practices.  *Galvan*, 2011 WL 5116585, at *14.

Pathway also bears the burden of establishing that another state's law will apply or that such an analysis would make the action unmanageable: "[S]o long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims."  This is particularly the case where a choice of law clause is involved that establishes California law applies the proper rule of decision. *Washington Mut. Bank, F.A. v. Superior Court*, 24 Cal.4th 906, 920-21 (2001)

(internal citations omitted); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 616 (1987) ("California's more favorable [consumer protection] laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.").

Here, Pathway has stated in its uniform contracts that California law controls this controversy, making application of California law appropriate.  As the conduct in question all emanates from this State and is controlled from here, California law properly applies here.  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal.4th 1036, 1063-64 (1999) (applying California law to nationwide class, as California "has a clear and substantial interest in preventing fraudulent practices in this state which may have an effect in both California and throughout the country").

### e.   Calculation of Damages or Restitution Does Not Defeat Predominance

Where the amount of damages or restitution is subject to a formulaic calculation, common questions predominate.  *See Blackie*, 524 F.2d at 905; *Negrete v. Allianz Life Ins. Co*., 238 F.R.D. 482, 493 (C.D. Cal. 2006) (holding that for purposes of class certification, it is sufficient that plaintiffs show "a facially plausible method" for establishing proof of monetary relief on a class-wide basis).  Here, monetary relief can be calculated on a class-wide basis based on the underlying illegality of Pathway's conduct.  The fees that Pathway illegally collected is uniform and an appropriate measure of damages where the underlying conduct is illegal as such fees must be returned under state and federal law.  Indeed, this was the remedy ultimately ordered by the State of Minnesota, for fees that on average were similar to those collected from the Smiths (further showing their typicality).  Mansfield Decl., ¶13, 31. Under *Bank of the West,* 2 Cal.4th at 1267, Pathway's revenues or profits from the illegal conduct in question is an appropriate measure of monetary relief.  Moreover under both the CLRA, Cal. Civ. Code § 3294 and the CROA, 15 U.S.C.A. § 1679g(a)(2)(b), punitive damages would be an available remedy, which would be set by a jury based

1   on Pathway's illegal conduct directed to the entire Class.

2          **2.     A Class Action is Superior to Other Methods of Adjudication**

3          Rule 23(b)(3) also provides that certification is appropriate if Plaintiffs show

4   class treatment "is superior to other available methods for fairly and efficiently

5   adjudicating the controversy."   The applicable test is not whether class cases are

6   superior to thousands of individual actions, but whether it is superior when compared

7   to other group-wide methods of resolution available to adjudicate this controversy.

8   *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y.

9   1996).   A class action is "superior" when no realistic alternative exists based on a

10  comparison of the alternative mechanisms for dispute resolution.   *See Valentino v.*

11  *Carter Wallace, Inc.*, 97 F.3d at 1234-35; *Hanlon,* 150 F.3d at 1023.

12         Because of the amounts at issue (a few thousand dollars per Class member),

13  class litigation is perhaps the only feasible way for Plaintiffs to pursue those claims.

14  *See In re USF Billing Practices Lit.*, 219 F.R.D. 661, 679 (D. Kan. 2004).   Indeed,

15  when asked what superior methods exist, Pathway provided no alternative other than

16  individual actions, which give Class members little incentive to litigate their claims

17  individually -- and in California -- against a company that says it is no longer actively

18  engaged in collecting new business, is understaffed, and now claims to be having

19  financial difficulties.   Mansfield Decl., Ex. 1, ¶33.   Individual Class members thus

20  likely have little or no interest in individually controlling the prosecution of this

21  action.   Fed. R. Civ. Proc. 23(b)(3)(A).   *Vasquez*, 4 Cal.3d at 808 ("Individual actions

22  by each of the defrauded consumers is often impracticable because the amount of

23  individual recovery would be insufficient to justify bringing a separate action; thus an

24  unscrupulous seller retains the benefits of its wrongful conduct.").

25         As no Notice of Related Case has been filed by Pathway, this action is the only

26  one presently proceeding to enforce the rights and remedies of these Class members

27  against Pathway.   Fed. R. Civ. Proc. 23(b)(3)(B).   Concentrating these claims in this

28  forum is highly desirable because Pathway is based here and Pathway claims in its

form consumer agreements this is the "exclusive" venue to litigate such claims. Plaintiffs' claims will completely resolve the claims of other Class members, rendering duplicative actions wasteful and inefficient. *See In Re USF Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) (certification of nationwide breach of contract claim was superior under such circumstances). As the Ninth Circuit held in *Hanlon*, 150 F.3d at 1023, "from either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." Presentation of evidence in one action will reduce unnecessarily duplicative litigation and promote judicial economy.

### 3.   Trial of the Class Claims Would Be Manageable

Because proof in this litigation in terms of Pathway's liability will come from Pathway, and little, if any, information would be required from the individual Class members, resolution of this action on a class-wide basis is manageable. Fed. R. Civ. Proc. 23(b)(3)(D). A trial plan as detailed in the Mansfield Decl., ¶¶27-32 summarizes how these claims can be litigated on a class-wide basis, both in terms of establishing Pathway's liability and appropriate remedies. "The proposal of a workable trial plan will often go a long way toward demonstrating that manageability concerns do not excessively undermine the superiority of the class action vehicle." *Zinser,* 253 F.3d 1190 (to show manageability plaintiffs' counsel should submit a class trial plan); *Vega v. T-Mobile, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009).[7]

### C.   Certification is Also Warranted Under Rule 23(b)(1) and (b)(2)

Rule 23(b)(1)(A) provides for class certification where separate actions would

---

[7]   For any class certified under Rule 23(b)(3), the Court must direct the best notice practicable under the circumstances to Class members. As set forth in ¶10 of the Mansfield Decl., Pathway should maintain records of all 4,483 Class members and their names and address – about 3,300 of whom are current Pathway clients. Thus, class notice could be comprised of sending a Court-approved letter to Class members to the addresses maintained by Pathway, with the addresses updated through the NCOA database for any changes of address for previous Pathway customers.

1   create the risk of "inconsistent or varying adjudications with respect to individual
2   class members that would establish incompatible standards of conduct for the party
3   opposing the class."   Rule 23(b)(2) also allows certification where defendant has
4   "acted or refused to act on grounds that apply generally to the class, so that final
5   injunctive relief or corresponding declaratory relief is appropriate respecting the class
6   as a whole."   A 23(b)(2) class should be certified for injunctive and declaratory relief
7   claims "if class members complain of a pattern or practice that is generally applicable
8   to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  Rule
9   23(b)(1) is an optimal way for both Class members and Pathway to ensure that the
10   determination of Pathway's obligations and a declaration that its form agreements are
11   void under federal and state law, and the impact of such a determination in terms of
12   the return of such monies, is made on a consistent basis.  *See Molski*, 318 F.3d at 950.

13       Class certification under Rule 23(b)(1) and (2) is also appropriate where the
14   claim for damages is "incidental" to the claims for injunctive and/or declaratory relief
15   and automatically flows from the determination of liability, such as where strict
16   liability attaches resulting from a statutory violation.  *See Zinser*, 253 F.3d at 1195;
17   *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, *18-19, 2011 WL
18   3047677.  Because any monetary award would "not require inquiry into new, nor
19   substantial, nor complex determinations regarding each plaintiff's individual case,"
20   this case can also be certified to proceed on a Class-wide basis pursuant to Rules
21   23(b)(1) and (2).  *Westways World v. AMR,* 218 F.R.D. 223, 241-42 (C.D. Cal. 2003).

## IV.   CONCLUSION

23       This Court should certify this case to proceed on behalf of the Class and appoint
24   Plaintiffs as the class representatives and the undersigned law firms as Class Counsel.

25   Dated:  August 6, 2012                    Respectfully submitted,

26                                             THE CONSUMER LAW GROUP

27                                             By:   S/Alan M. Mansfield
                                                     ALAN M. MANSFIELD
28                                                   alan@clgca.com

10200 Willow Creek Road, Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS, LLC
Joe Whatley, Jr.
(Admitted *pro hac vice*)
jwhatley@wdklaw.com
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 447-7070
Fax: (212) 447-7077

MAURIELLO LAW FIRM, APC
Thomas D. Mauriello (SBN: 144811)
tomm@maurlaw.com
1181 Puerta Del Sol, Suite 120
San Clemente, CA  92673
Tel: (949) 542-3555
Fax: (949) 606-9690

PENN & SEABORN
Myron C. Penn
(Admitted *pro hac vice*)
myron@pennandseaborn.com
L. Shane Seaborn
(Admitted *pro hac vice*)
shane@pennandseaborn.com
53 Highway 110
P. O. Box 5335
Union Spring, AL  36089
Tel: (334) 738-4486
Fax: (334) 738-4432

Attorneys for Plaintiffs